Fecteau, J.
These are actions that seek forfeiture of currency and a motor vehicle pursuant to G.L.c. 94C, Sec. 47. Civil action number 99-0481 was commenced on March 11, 1999, by the filing of a civil complaint. The plaintiffs complaint was amended as of right on March 26, 1999, in order to identify Sheila Duval as an additional interested party. She was permitted to intervene as an additional defendant and she answered on April 21, 1999.
*451 With respect to civil action number 99-0920, the Commonwealth filed its complaint on May 12, 1999, with an answer being filed thereto on June 18, 1999.
On June 7, 1999, motions for return of the property in question were filed along with a request for eviden-tiary hearing. A hearing was assigned for July 16, 1999. On that date, the plaintiff filed its motion for a stay of these forfeiture proceedings pending trial or disposition of the criminal prosecution to which it relates, to which motion Duval objected. For purposes of evidentiary hearing, the two cases were ordered consolidated. An evidentiary hearing was begun on that date but was suspended to allow the Commonwealth an opportunity to investigate the evidence pro-ferred by Duval. The hearing resumed on August 12, 1999. The parties were given until August 30, 1999 to submit proposed findings of fact and rulings of law.
BACKGROUND
On January 16, 1999, members of the Worcester Police Department executed a search warrant at 25 Eastham St., Worcester, the home of Matteo Trotto and Sheila Duval, husband and wife. In a closet in the master bedroom, a briefcase was found and, when opened, it revealed the currency for which the Commonwealth seeks forfeiture, along with vitamins, steroids and documents of unknown content. In the same closet, a firearm was found. At the time of the execution of the warrant, Duval, upon being asked by police as to whose closet in which the briefcase was found, indicated that it was Trotto’s, although she stated at the same time that the briefcase was hers. She denied ownership of the steroids.
In the garage of the home was the motor vehicle in question. In it was found a set of keys to 11 Erickson St., Worcester, another targeted location for this search warrant, as well as the key to a locked room therein and a combination to a safe that was located in that room that contained over two hundred grams of cocaine.
The execution of this warrant was the apparent culmination of an on-going investigation into the activities of Matteo Trotto which had been conducted over the prior five months or more. From August 1998, through mid-January 1999, police had arranged approximately five “controlled buys” of cocaine. Officer Timothy O’Connor participated in the surveillance of at least three of these buys during which Trotto was observed to leave 25 Eastham St., drive in the subject motor vehicle to 11 Erickson St., a so-called “safe-house,” and then leave and meet the confidential informer who was working with the police to make the buys. Trotto was then seen to drive directly back to 25 Eastham St.
Sheila Duval testified that the currency in the briefcase was hers, that it primarily came from $15,000.00 in proceeds from a buyout, in April 1997, of her interest in a pizza business that she had run with the buyer, and another $15,000.00 from the return of a cash bail in connection with the dismissal of a case against Trotto in September 1998. With respect to the proceeds of sale, she testified that $10,000.00 was paid as a down payment with a promissory note for the balance which was paid shortly thereafter. Duval said she kept the proceeds of this sale in cash in the briefcase. Although the court credits the testimony concerning the sale of her business, the testimony that the proceeds were kept in cash in the subject briefcase continuously until the seizure by police is not believed.
Likewise, with respect to the return of the cash bail, which had been posted by Duval’s father to secure the release of Trotto, the court credits the testimony of Duval that her father allowed her to keep the money in the nature of a gift. The court does not believe that $15,000.00 of the currency seized by the police on January 16, 1999, is cash from the return of bail, however.
There was no evidence that any of the cash seized at that time came from any particular drug transactions, nor was there any “marked” or recorded “buy” money among the currency seized.
DISCUSSION
Under G.L.c. 94C, Sec. 47, there are, with the exception of motor vehicles and other “conveyances,” two methods by which the Commonwealth of Massachusetts may seek forfeiture of personal or real property that it believes is connected to the distribution of controlled substances: first, it may await final disposition of the criminal case through which seizure of the property has occurred (see Sec. 47(b)), and second, by initiation of a civil action, in rem, in the Superior Court (see Sec. 47(d)), as the Commonwealth has done in the case at bar. In either case, there is a two-step analysis which must be employed in order to determine the rights of the parties. First, there is a burden upon the Commonwealth to show probable cause for the initiation of the action, i.e., that a drug-property connection, or nexus, exists. If such is shown, then the burden shifts to the owner or party having an interest in the property to show a lawful source and purpose for the property and that forfeiture is not warranted under the statute.
First, with respect to the motor vehicle in question, G.L.c. 94C, Sec. 47(c)(1) and (3) states that it shall not be forfeited unless it shall appear that the owner was a consenting party or privy to a violation of the controlled substances act, knowing or having cause to know that such vehicle was used in and for the business of distribution of controlled substances, among other things. Evidence of the use of the vehicle to facilitate the unlawful distribution or possession with intent to distribute controlled substances on three or more different dates shall be prima facie evidence that the vehicle was used in and for the business of distribution of controlled substances.
*452 Here, there is credible evidence that the vehicle in question was used at least three separate and distinct dates for the purpose of the distribution or possession with intent to distribute controlled substances, namely, cocaine. Notwithstanding that the vehicle did not contain controlled substances on the date of its seizure, a reasonable inference is drawn that on each of the dates of the controlled buys observed by the police, Trotto transported cocaine in the vehicle, picking it up at the safe house at 11 Erickson St., delivering it to the informant, and then returning the proceeds of the sale to 25 Eastham St. Moreover, the vehicle did contain on the date of the seizure, keys and the combination to the stash of cocaine. The moving party has offered no evidence to rebut the Commonwealth’s prima facie case. With respect, then, to the motion of Sheila Duval for the return of the motor vehicle in question, it is denied. An order of forfeiture is warranted.
Turning next to the currency in the briefcase seized by police, the Commonwealth may seek the forfeiture of moneys “furnished or intended to be furnished in exchange for a controlled substance, all proceeds traceable to such an exchange . . . and all moneys used or intended to be used to facilitate any violation of any provision of’ various sections of the controlled substances act. G.L.c. 94C, Sec. 47(a)(5). On its showing, the Commonwealth has established probable cause to believe that a nexus exists between the currency seized and an illegal drug business which is represented by the evidence. The burden thus shifts to the interested party, Duval, to prove by a preponderance of the evidence that the currency is not for-feitable, or, in other words, that there is a lawful explanation for the source of and purpose for the money. Although she has offered an explanation for $30,000.00, of the currency, it is not credible. Given the controlled purchases observed by the police, most of which occurring after September 1998, the route in which Trotto traveled for these drug sales and the connection between the items found in the motor vehicle found at 25 Eastham St. and the safe house at 11 Erickson St. which contained a large quantity of cocaine, there is a greater inference that the money seized by the police was either proceeds from drug sales, or intended for future drug purchases to resupply his stash than came from the sale of a pizza business almost two years prior or from the return of bail money four months prior. There is not only no evidence that the briefcase was used exclusively by Duval, there is evidence that both she and Trotto had access to its contents. In fact, illegal substances, namely the steroids, were found in the briefcase with the money. Furthermore, there was no explanation offered at all as to the not insubstantial amount of additional currency found in the briefcase totaling four thousand thirty-nine dollars and fifty cents ($4039.50). Therefore, the interested party has not met her burden of proving a legitimate source for the currency seized at the time of the execution of the search warrant on January 16, 1999.
ORDER
For the foregoing reasons, the motion of Sheila Duval for the return of seized property, namely thirty four thousand thirty-nine dollars and fifty cents ($34,039.50) and one 1989 Mercury Marquis Sedan bearing identification number 2MEBM75FGQKX651702 is denied.